JULIA E. BOYD, Administratrix of Asbury McKendree Boyd, Deceased,

*vs.*

HENRY SHIRK.

*Equity*: *pleading; allegations of bill; must be clear and accurate as to essential allegations; general charge usually sufficient; fraud; how to be charged.* *Demurrers*: *conclusions of law not admitted.* *Executors and administrators*: *duty of—; laches.*

Every material fact, which it is necessary for a complainant to prove to establish his right to the relief he asks, must be alleged in the bill with reasonable accuracy and clearness.

p. 179

A general charge of the matters of fact, however, is usually all that is required, and it is not necessary to state minutely all the circumstances which go to prove the general charge.

p. 179

But where the complainant seeks relief on the ground of fraud, he must do more than make the general charge; he must state the facts which constitute the fraud. p. 179

A demurrer does not admit conclusions of law drawn by a plaintiff from facts stated in the bill. p. 181

The law imposes upon all persons having the settlement of the estates of decedents the duty of protecting the estates.

p. 182

When a person with such a duty comes into court four and a half years after his appointment, and declares he could not by due diligence have discovered the alleged fraud, when, from his own admissions, the very thing happened which should have put him upon notice, he is guilty of laches, and to grant him relief would be aiding too far those who are dilatory in the performance of their official duties.                                        p. 182

*Decided January 26th, 1915.*

Appeal for the Circuit Court of Baltimore City.   (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J. BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Chas. H. Medders,* for the appellant.

*J. Purdon Wright* and *Harold Tschudi* (with whom was *Armstrong Thomas* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This appeal brings up for determination the correctness of the rulings of the lower Court, on a demurrer to an amended bill. Demurrers to the original, and two amended bills, having been sustained, the demurrer to the third amended bill was sustained and the bill dismissed.

The bill was filed March 19th, 1913, by the appellant, as the administratrix of the personal estate of her father, who was resident of Virginia at the time of his death in June, 1908. Letters of administration were issued to the appellant in November, 1908, by the Orphans' Court of Baltimore City for the purpose of administering on the personal estate of the decedent located in Baltimore.

One of the grounds urged for sustaining the demurrer, makes it necessary that we set out, quite fully, the allegations of the amended bill.

The bill alleges that Asbury McKendree Boyd was, at the time of his death, the owner of several leasehold properties in Baltimore City, and describes them by location, as to streets and numbers; that Henry Shirk, the defendant below and appellee here, was employed in March, 1894, by the said Boyd as his attorney and agent, to collect the rents and look after the properties generally; that the said Boyd was at the time a resident of Virginia, and "suffering from a progressive disease, which affected his mind and body, and caused his death, all of which was known to the defendant"; that the said Shirk "while acting as attorney and agent, as aforesaid, did at various times borrow, and cause to be borrowed, large sums of money on the properties herein mentioned, by way of mortgages, notes, assignments and otherwise from various persons and Building Associations, which money the defendant fraudulently appropriated to his own use; that the defendant neglected to pay taxes and other expenses due on said properties, or to repair the same, although he led your oratrix's decedent to believe he had done so." It is further alleged that the said Shirk, while attorney and agent, "by various fraudulent schemes did obtain title to several of said properties belonging to said Boyd, and Boyd's estate, by misrepresenting the debts and expenses on said properties; and having a fraudulent claim of $1,813.88 passed by the Court." And also alleged that the defendant, while acting as attorney and agent, did collect large sums of money by way of rents, mortgages, sales and otherwise from said properties, the exact amounts of which are unknown to your oratrix, and did appropriate the same to his own use and benefit, and has never accounted to the said Boyd or your oratrix" for the same "which should have been credited to the said Boyd and said Boyd's estate instead of being charged against them, although an accounting was and has been demanded from said defendant by said Boyd and your ora-

trix, which said defendant has and now refuses to give." It
is further alleged that Shirk had full charge of all the prop-
erties and collected all rents from the date of his first employ-
ment in March, 1894, until the present time, with the excep-
tion of two of the properties, naming them, which were taken
out of his control in August, 1912. It is further alleged,
again using the language of the bill, "that the defendant
withheld the true status of the properties mentioned herein
from your oratrix's decedent and from your oratrix, and
that the defendant was not suspected of any wrong doing
alleged herein until about August, 1912, when she had all
matters connected with said properties investigated by
another attorney, and then, for the first time, the fraud
herein alleged was discovered." There is a further allegation
that the fraudulent acts, misrepresentations and misappro-
priations could not have been discovered, with due diligence,
within three years before the filing of the bill. The bill con-
cludes by alleging that the estate cannot be closed until
the moneys, had and received by the defendant as attorney
and agent, have been accounted for, and which facts are
peculiarly within his knowledge.

The relief prayed is, that the defendant discover and set
forth in detail all sums of moneys received by him by way
of rents, profits, sales, mortgages, notes or otherwise from
said properties which were managed by him as attorney and
agent; that he account with the complainant for her interest,
as administratrix, in the rents and profits of the properties
from the date of employment to the present; that he may be
decreed to pay over to her all sums due by him as such attor-
ney and agent; that the defendant shall be required to account
for rents and profits from the properties now in his name, and
which formerly belonged to the estate of said Boyd; that he
may be decreed to hold the properties, now in his name for-
merly belonging to the said estate, as a resulting trust; that
he account for the net profits therefrom since his alleged
ownership, and for general relief.

The grounds of demurrer were stated to be: (1) That the bill does not state such a cause of action as entitled appellant to the relief of a Court of Equity; (2) that the allegations are too general and indefinite to require an answer; (3) that the allegations of fraud are too general; (4) the Statute of Limitations; (5) no sufficient allegation of facts to avoid the bar of the statute; (6) no sufficient allegations excusing or explaining the delay in ascertaining the alleged rights, and (7) multifariousness.

No rule of equity pleading is better settled than that which declares, that every material fact, which it is necessary for a complainant to prove to establish his right to the relief he asks, must be alleged with reasonable accuracy and clearness. If the case is set out in a vague and indefinite manner a demurrer will lie. A general charge of the matter of fact, however, as a general rule is all that is required and it is not necessary to state minutely all the circumstances which go to prove the general charge, for these circumstances are more properly matters of evidence. *Story's Eq. Pl.,* sec. 28; *Miller's Eq. Pro.,* sec. 92. But where a complainant seeks relief on the ground of fraud he must do more than make a general charge of fraud; he must state the facts which constitute the fraud, so that the person against whom relief is sought may have a full opportunity, not only to deny or explain the facts charged, but to disprove them. He has a right to know, in advance of being required to file an answer, just what he is compelled to meet. As is stated by Mr. Justice Story in his work on *Equity Pleading,* before referred to, at section 251: "Where a bill seeks a general account upon a charge of fraud, it is not sufficient to make such charge in general terms; but it should point out, and state particular acts of fraud." To this effect are all the decisions in Maryland, and so numerous are they that we do not deem it necessary to cite any more than one of the latest, *Reeder* v. *Lanahan,* 111 Md. 372.

When these principles are applied to the bill in this case it is readily seen how far short of the requirement of good

pleading these allegations fall. The charges of fraud are made not only in the most general terms, but are so vague and indefinite as to give not the slightest indication to the defendant what facts and circumstances he is to deny or disprove, other than that he has defrauded the estate. Take for instance the first charge of fraud in the bill. It is alleged that he, while acting as attorney and agent, did at various times borrow and cause to be borrowed on the properties, large sums of money from various persons and building associations, by mortgages, notes, assignments, etc., and appropriated the money therefrom to his own use. Could any charge be more indefinite than this? If this defendant is to intelligently answer this charge, he is entitled to know each sum that was borrowed and misappropriated, when it was borrowed and from whom borrowed, how each mortgage, note, assignment, etc., was made, and to whom made, and possibly where each mortgage was recorded. It must be remembered that the defendant had had general charge of the properties for a period of nearly twenty years; and it certainly cannot be claimed that, on a general charge such as this, he can be called upon to explain each and every financial transaction connected with the properties. The allegation is made that from an investigation made for the complainant by another attorney, the frauds were discovered. If such frauds had been discovered it was in the power, and the duty, of the complainant to set them out in her bill. Why she has not done so after so many demurrers had been sustained on this ground, is conceivable only on the theory that what has been discovered for her consists of suspicions rather than facts. It is at all times dangerous to relax the settled rules of law to meet the necessities of special cases, but there is not the slightest excuse, and we might add temptation, to do so, when one insists he has certain facts within his knowledge and persistently refuses to disclose them.

What we have said as to the paragraph mentioned applies equally to every other paragraph where fraud is charged.

Instead of charging that by various fraudulent schemes title was obtained to several of the properties, the facts themselves should have been set out, and, further, the properties so obtained should have been designated. The allegation in the next paragraph is in almost the identical language in which fraud was charged in the caes of *Reeder* v. *Lanahan, supra,* and this Court in disposing of that allegation, said: "The allegation of fraudulent appropriation of the assets of the firm is too loose and indefinite to be noticed." We think this language is applicable not only to this paragraph, but·is equally so to every paragraph here under discussion. We are, therefore, of the opinion that the lower Court was correct in sustaining the demurrer on the ground of uncertainty and indefiniteness.

In dismissing the bill we are also of the opinion the ruling was correct. From the allegations it appears that Mr. Boyd died on the 24th day of June, 1908, and that letters of administration were granted to the complainant on the 23rd day of November, in the same year, by the Orphans' Court of Baltimore City, for the purpose of settling his estate situated in Baltimore, he having been a resident of the State of Virginia. The original bill was not filed until the 19th day of March, 1913, almost four and one-half years after the complainant had assumed the duties and obligations of an administrator. She alleges the defendant was not suspected of wrong doing until August, 1912, and that the fraudulent acts could not have been discovered by due diligence. A demurrer does not admit conclusions of law drawn by a plaintiff from facts stated in the bill. *Miller's Eq.,* sec. 133. That the alleged frauds could not have been discovered by due diligence is a conclusion of law. In our opinion, from the facts stated, we think the complainant was guilty of laches in not prosecuting her alleged cause of action until four and a half years after she qualified as administratrix. She had been appointed for the especial purpose of settling the personal estate of the decedent and apparently did nothing toward that end, other

than demand an accounting from her decedent's agent.    But it might be said that she had no reason to suspect the trusted attorney of her deceased father of wrong doing, and that the failure to get an accounting from him was nothing more than a delay that is more or less usual between attorneys and clients. But the force of that argument is lost, when it is recalled that the decedent had in his lifetime demanded an accounting and had been refused.  The law imposes upon all persons having the settlement of the estates of decedents the duty of protecting those estates.   The process of the Courts is open to them for that end.   And for a person charged with that duty to come before a Court four and a half years after appointment and declare he could not have discovered by due diligence an alleged fraud, when from his own admissions the very thing had happened, which should have put him on notice, would be aiding too far those who are dilatory in the performance of their official duties.

The decree of the lower Court will therefore be affirmed.

*Decree affirmed, with costs to the appellee.*