Florence A. HANEKE, Appellee,

v.

UNITED STATES of America, Appellant.

Florence A. HANEKE, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 76–1278, 76–1279.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1976.

Decided Feb. 9, 1977.

---

Daniel H. Honemann, Baltimore, Md. (Clapp, Somerville, Black & Honemann, Baltimore, Md., on brief), for appellee in 76–1278 and for appellant in 76–1279.

Ernest J. Brown, Asst. U. S. Atty. (Jervis S. Finney, U. S. Atty., Baltimore, Md., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Gary R. Allen, Francis J. Gould, Attys. Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellant in 76–1278 and for appellee in 76–1279.

Before BRYAN, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Florence A. Haneke appeals the judgment of the district court holding that transfers which she made from four joint savings accounts to her separate accounts were in contemplation of the death of her husband, August B. Haneke.[1] The government cross-appeals, assigning error to the court's ruling that her transfers of another joint savings account and jointly held savings bonds were not made in contemplation of his death. We conclude that all of the transactions were made in contemplation of Mr. Haneke's death, and, therefore, must be included in his gross estate pursuant to § 2035 of the Internal Revenue Code.[2]

Mr. Haneke provided all of the funds for five savings accounts which listed Mr. and Mrs. Haneke as joint owners with right of survivorship. Under Maryland law, each joint owner could legally withdraw these funds without securing the approval of the other. See, e. g., Kornmann v. Safe Deposit & Trust Co., 180 Md. 270, 23 A.2d 692 (1942). Mr. Haneke also purchased United States savings bonds which he registered in their joint names. All of these transactions occurred more than three years before his death.

In the last 16 months of Mr. Haneke's life, Mrs. Haneke, without her husband's knowledge or consent, transferred the funds in contention. During this period, Mr. Haneke, who previously had had a heart attack, was, twice hospitalized, and later, suffering from Parkinson's disease, was admitted to a nursing home. He died of pneumonia at the age of 76.

I

General principles governing the taxation of jointly held property are well settled. When Mr. Haneke opened jointly held savings accounts or purchased jointly registered bonds, he did not make taxable gifts to his wife, since he retained the power to dispose of the funds for his own use. Treas.Reg. §§ 25.2511–1(h)(4), 25.2511–2(b). If the joint accounts remained intact at Mr. Haneke's death, all of the funds would be included in his gross estate. Int.Rev.Code § 2040. The funds would also be included in his estate if he transferred them to his wife in contemplation of his death. Int. Rev.Code § 2035; Estate of Henry Wilson, 2 T.C. 1059, 1092–93 (1943).

The primary question is whether § 2035 requires that the property transferred by Mrs. Haneke be included in her husband's estate.[3] This section provides that the value of a decedent's gross estate includes "the value of all property . . . of which the decedent has at any time made a transfer . . . by trust or otherwise, in contemplation of his death." Mrs. Haneke contends that the funds cannot be included in Mr. Haneke's estate because she, not her husband, made the transfers from joint to individual ownership. Rejecting this argument, the district court held that Mrs. Haneke was acting as her husband's alter ego, and, consequently, her intention should be imputed to him.

The district court's conclusion is supported by City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594, 598–99, 65 S.Ct. 496, 89 L.Ed. 483 (1945). In that case, the Court held that, although the Code[4] literally refers to transfers by the decedent, it should be construed to embrace transfers made on the decedent's behalf. The Court ruled that when local law authorizes a

1. The opinion of the district court is reported as Haneke v. United States, 404 F.Supp. 98 (D.Md.1975).

2. Since Mr. Haneke died in 1971, the Tax Reform Act of 1976 is not applicable to the disposition of this case.

3. In the district court, the Commissioner contended that these funds were also taxable under section 2040 of the Internal Revenue Code. He does not press this argument on appeal.

4. In City Bank, the Court construed section 302(c) of the Revenue Act of 1926, which is the predecessor to section 2035.

chancery court to substitute itself for an incompetent, the chancellor's motives for making transfers prior to the incompetent's death should be imputed to the incompetent.

*City Bank's* reasoning is applicable to this case. In each instance, property that otherwise would have been included in the decedent's estate was given away by one who was authorized under local law to act in place of the decedent. Mr. Haneke's creation of the joint accounts allowed his wife, acting pursuant to Maryland law, to complete his inchoate gift without his knowledge or consent. Because Mrs. Haneke was empowered to dispose of her husband's property, the district court rightly concluded that her transfers and motives should be ascribed to Mr. Haneke. In this situation, as in *City Bank,* the statute should be construed to achieve its purpose of taxing substitutes for testimentary dispositions. *See United States v. Wells,* 283 U.S. 102, 116–17, 51 S.Ct. 446, 75 L.Ed. 867 (1931).

For the foregoing reasons, *Wilson v. Commissioner,* 56 T.C. 579, 587–88 (1971), and *Estate of Zaiger v. Commissioner,* 64 T.C. 927, 939 (1975), do not persuade us to reverse the district court. In those cases, the Tax Court held that the donor's motive for opening a joint account determines whether the gift is in contemplation of death. The Tax Court has subsequently questioned this result because the gift is not complete until the donee withdraws the funds from the account. *Estate of Green v. Commissioner,* 64 T.C. 1049, 1065 (1975). Furthermore, *Wilson* has been justifiably criticized because its technical interpretation of the statute distorts the orderly system of estate taxation and suggests a means of tax avoidance. C. Lowndes, R. Kramer, & J. McCord, Federal Estate and Gift Taxes 289 (3d ed. 1974).

## II

■ Since Mrs. Haneke's motives are imputed to Mr. Haneke, we must determine whether the transactions were made in contemplation of his death. Section 2035 creates a rebuttable presumption that gifts made within three years of death are in contemplation of death. Because Mrs. Haneke could not recall the reason for transferring funds from four accounts, the district court properly held that she did not rebut this presumption and that these funds should be included in Mr. Haneke's estate.

■ In considering the transfers of the other joint account and the bonds, the district court concluded that Mrs. Haneke's motives were associated with the continued life of Mr. Haneke, rather than his death. Based on Mrs. Haneke's testimony, it found that she transferred funds from the joint account to a savings account in the names of herself and her sister-in-law to assure that, if anything happened to her, the funds would be available for Mr. Haneke's care. The court also found that she transferred series E bonds to series H bonds to meet Mr. Haneke's expenses in the nursing home. The court credited her explanation that, at the suggestion of a bank clerk, she placed the bonds in her own name so that, if anything happened to Mr. Haneke, they would not require another change in registration. Although we accept the district court's factual findings, we do not agree with its conclusion of law that the transfers were not in contemplation of death.

The Treasury Regulations define transactions in contemplation of death to include those made as "a substitute for a testimentary disposition of the property." Treas. Reg. § 20.2035–1(c). A well-recognized substitute is a transfer with a retained life interest. Int.Rev.Code § 2036; *Guynn v. U. S.,* 437 F.2d 1148, 1150 (4th Cir. 1971). Because Mrs. Haneke admittedly planned to use the transferred funds for her husband's care, she intended him to retain a life interest. She understood that neither she nor her sister-in-law would gain beneficial ownership of any of the funds until his death. The transfers were, therefore, a substitute for a testimentary disposition of the property, and, pursuant to the Treasury Regulations, they must be considered transactions in contemplation of death. Consequently, § 2035 requires that the value of the bank

**1142**

account and the Treasury bonds be included in Mr. Haneke's estate.

The judgment of the district court is affirmed (76–1279) and reversed (76–1278) and this case is remanded for the entry of an appropriate judgment for the Commissioner.